The Honorable Gordon Webb Prosecuting Attorney P.O. Box 483 Harrison, AR 72601
Dear Mr. Webb:
This is in response to your request for an opinion on several questions regarding constables. You have asked twenty-eight questions, which I will restate and answer in the order posed.
Your first question inquires as to the duties of constables. Because your questions appear to focus primarily on the law enforcement aspect of constables, I will assume that your first question pertains to those duties. The law enforcement-related duties of constables are set out generally at A.C.A. §§ 16-19-301
and 16-19-503 (1987). They include being a conservator of the peace, arresting certain offenders, and serving process. We recently issued an opinion discussing these duties. See Op. Att'y Gen. 91-039, a copy of which is enclosed. There are, additionally, various other statutes regarding duties of constables, most of which set forth duties that are concurrent with those of sheriffs and justices of the peace.[1] If additional information is needed with regard to any of these specific areas of authority, I will expand this opinion upon request.
Your second question inquires as to the arresting authority of constables. The authority of constables to make arrests is based upon A.C.A. § 16-19-301 (1987). This authority to make arrests was also discussed previously in Attorney General Opinions 91-090
and 89-197, copies of which are enclosed, wherein it was concluded that, based upon § 16-19-301(a), constables have the duty to suppress riots, affrays, fights, and unlawful assemblies, and shall make arrests for such breaches of the peace. Section16-19-301(b) provides:
 If any offense cognizable before a justice of the peace in his township is committed in his presence, the constable shall immediately arrest the offender and cause him to be dealt with according to law.
This provision apparently authorizes constables, in their township, to arrest individuals who commit misdemeanors in their presence. See also Credit v. State, 25 Ark. App. 209,758 S.W.2d 10 (1988).[2]
Your third question is whether constables are limited strictly to the township to which they are elected or are they peace officers of the entire state. I assume your question refers to the duties and arresting authority of constables. This question was also addressed in part by Attorney General Opinion 89-197. That opinion concluded that, with regard to warrantless arrests based upon probable cause, the authority of a constable to arrest is not statewide. Rather, with the exception of "fresh pursuit," A.C.A. § 16-19-301(d) makes reference to the constable's "township." Likewise, § 16-19-301(a) refers to each constable being a conservator of the peace "in his township," and §16-19-301(b) and (e) refer to the constable arresting offenders for offenses committed "in his township." It is thus my opinion that, with a limited number of exceptions, constables are limited in their duties and authority to their respective townships in which they were elected to serve.[3]
Your fourth question is whether a constable can serve civil process in his township or county. The answer to this question is "yes." See A.C.A. § 16-19-503(a)(2) and Op. Att'y Gen. 91-030, a copy of which is enclosed.
Your fifth question inquires as to the guidelines and restrictions that apply to the service of civil process by constables. See Op Att'y Gen. 91-030, which discusses at length the service of civil process by constables and offers guidance in the nature of the authority of and restrictions upon constables in their service of civil process.
Your sixth question is who determines whether the service of civil process is to be carried out by the constable. This question was also addressed in Op. Att'y Gen. 91-030, which sets out the statutory circumstances under which constables may be called upon to serve civil process, as well as those courts or individuals authorized to direct a constable to serve the process.
Your seventh question is whether constables are to be paid for serving civil process. Attorney General Opinions 91-030 and 91-039 answered this question in the affirmative and set out the appropriate fees a constable may charge for serving civil process.
Your eighth question is, assuming a constable has the authority to arrest, where should he take the arrested individual. This question is answered by A.C.A. § 16-19-301(e) (1987), which states:
 If it comes to the knowledge of any constable that an offense mentioned in this section has been committed in his township, it shall be the duty of the constable to present the offender to a justice of the peace of the township in order that the offender may be arrested and brought to trial as prescribed by law.
See also A.C.A. §§ 12-42-106(d); 16-81-104(a)(3); 16-83-106(a)(2); 16-85-603(c); and 16-112-123.
Your ninth question is whether the sheriff's department would have an obligation to accept a lawfully arrested person to be detained in the county jail. I assume your question refers to persons who are lawfully arrested by constables. The answer to this question is "yes." A.C.A. § 12-41-503 (1987) states:
 It shall be the duty of the jailer to receive from constables and other officers all persons who may be apprehended by such constables, or other officers for offenses against this state, or who shall be committed by any competent authority.
See also A.C.A. §§ 14-14-1301(b)(5)(B)(i) and 16-85-603(c).
Your tenth question is, if the sheriff's department is not obligated to accept an individual arrested by a constable, where would the arrested individual be taken? Based on the foregoing affirmative response to question nine, i.e., that the sheriff's department is obligated to take the arrested individual, question ten is moot.
Your eleventh question inquires as to the procedure a constable should use to obtain a call sign radio number. I assume your question refers to the frequency signal used in two-way radio communications. Users of two-way radio systems must apply for a frequency assignment through the Associated Public-Safety Communications Officers, Inc. (APCO). See also generally
Federal Communication Commission (FCC) Rules and Regulations §§ 90.173(a), 90.173(f) and 90.175(a) for policies governing the assignment of frequencies. Frequencies are assigned based upon consideration of, inter alia, the type of system in use, the adjacent channel mileage, the population coverage, the population congestion and the surrounding terrain. An application for a frequency assignment may be obtained from APCO's national headquarters in Daytona Beach, Florida. Their telephone number is 1-904-322-2500.
Your twelfth question inquires as to whether a constable should transmit through the county's two-way radio system. This question is also governed by the FCC Rules and Regulations. As set out above, the frequency coordinator makes the decision as to whether a particular frequency is issued, and the determination whether an applicant, including a constable, will share a frequency with others in a county will depend upon consideration of the factors listed above.
Your thirteenth question inquires where a constable would transmit to in case of an emergency. Again, this determination is made by the frequency coordinator with a view to all the surrounding circumstances. This question would therefore, of necessity, be properly addressed to that party upon application of a frequency assignment.
Your fourteenth question is whether the county is obligated to provide a two-way radio service to a township constable. The answer to this question is, apparently, "no." Our research has indicated no such requirement of county offices. As set out above, individuals may apply for their own service by following the procedures previously outlined for obtaining an assigned frequency for two-way radio service.
Your fifteenth question re-states your thirteenth question regarding where a constable would transmit to in case of an emergency. Again, the answer to this question must be made by the frequency coordinator with a view to all the surrounding circumstances.
Your sixteenth question is where does a constable obtain funding for equipment such as a two-way radio/scanner, mobile antenna, uniform, badge, office supplies, etc. With regard to this issue, A.C.A. § 14-14-1203 (1987) states:
 All compensation, including . . . expense allowances, and other remunerations, allowed to any county or township officer . . . shall be made only on specific appropropriation by the quorum court of the county.
See also A.C.A. § 14-14-1207 (1987).
Thus, if the quorum court elects to allow for compensation of such expenses as those about which you have inquired, a specific appropriation must thereafter be made.
Your seventeenth question is whether constables, as elected officials, have access to and may use county equipment such as spare radios, vehicles, etc. With regard to this issue, A.C.A. §14-14-1102(b)(3) (1987) states:
 The county judge, as the chief executive officer of the county, shall have custody of county property and shall be responsible for the administration, care, and keeping of such county property, including the right to dispose of county property in the manner and procedure provided by law for the disposal of county property by the county court. The county judge shall have the right to assign or not assign use of such property whether or not the county property was purchased with county funds or was acquired through donations, gifts, grants, confiscation, or condemdation.
The procedure for the sale of county property and surplus personalty is set out at A.C.A. §§ 14-16-105 and -106 (1987).
Accordingly, the county judge would make the decision as to whether any property of his county might be used by individuals such as constables.
Your eighteenth question inquires as to the procedure for constables to run background checks pursuant to investigations. Arkansas Code of 1987 Annotated § 12-12-211(a) states that the Arkansas Crime Information Center (ACIC) shall make criminal records on persons available to criminal justice agencies in their official capacity. Because constables are "peace officers," as reflected in Op. Att'y. Gen. 91-090, it appears that they would therefore be regarded as officers of "criminal justice agencies" such that they might apply for authorization to access ACIC information. See response to question 19, infra.
Your nineteenth question is whether constables may run background checks through the sheriff's dispatcher or through the state police computer system. I assume, by "background checks," you are referring to information access via the Arkansas Crime Information Center (ACIC) system. Section 7(E)(2) of the ACIC System Regulations discusses the requirement of maintainance of "secondary dissemination logs" by those criminal justice agencies which have ACIC systems. The regulation appears to contemplate certain subsequent dissemination of information retrieved through the ACIC system to other officials outside the original receiving agency. Provided the constable is a properly authorized member of a criminal justice agency, the regulations apparently do not prevent either a sheriff or a state police agency from allowing the constable access to the ACIC system. See generally
Sections 3-12 of the ACIC System Regulations, which discuss the procedure for a constable to become authorized to access the ACIC system.
Your twentieth question inquires as to the restrictions or limitations that apply to constables. I assume you are referring to those restrictions or limitations which would come into play when a constable is utilizing the ACIC system. With regard to this issue, § 3 of the ACIC System Regulations requires that users obtain an originating agency identifier (ORI) number in order to access the system. Section 3 also provides that information retrieved from the system be restricted solely to uses for the "administration of criminal justice." Section 6 requires that information obtained from the system be verified to confirm that the information is accurate before acting on the information. Section 8(A) requires that users abide by the procedures and standards set by the ACIC. Section 11 requires that all individuals operating ACIC terminals be trained in basic use, and attend a yearly certification class. Section 12 requires that each law enforcement agency sign a user agreement that outlines its duties and responsibilities, and ensures compliance with policies and procedures. Section 8(C) states that violations of the regulations will result in administrative and criminal sanctions. Arkansas Code Annotated § 12-12-212 (1987) states that willful release of information to unauthorized persons or willfully obtaining information for purposes not specified in the act shall be a felony, with a fine of up to $5,000 and imprisonment up to three years.
Your twenty-first question is whether there is any legal obligation on the part of the county or state to provide/cooperate in processing such requests by a constable. Again, I will assume you are referring to requests for access to the ACIC system. Our research yields no such mandate on the part of either the county or state. Rather, as set out above in response to question 19, the regulations appear to contemplate the secondary dissemination of information. There appears, however, to be no specific legal obligation to either provide such information or to cooperate in processing requests for information. The secondary dissemination of information from an agency to a constable would, however, of necessity seem to require at least some measure of cooperation.
Your twenty-second question inquires as to the limitations or restrictions pertaining to the carrying of weapons by constables. With regard to this issue, A.C.A. §§ 5-73-104 and -120 (1987 and Cum. Supp. 1991) authorize the possession or use of firearms by law enforcement officers in the course and scope of their official duties. As set out above in response to question 18, constables are included within the definition of "peace officers," and thus would, in my opinion, come within the purview of Sections 5-73-104 and -120.
Your twenty-third question is whether constables may carry weapons outside their townships, "concealed or otherwise, like sheriffs carry their weapons outside their county limits." As stated in the preceding paragraph, law enforcement officers are authorized to possess firearms "in the course and scope of their official duties." While the statute does not address the issue of whether such possession includes carrying a firearm outside a constable's township, it is my opinion that, where the official duties of a constable carry him outside his township (see
response to question 3, supra), such possession of a firearm is apparently not prohibited.
Your twenty-fourth question is who bears the cost of investigations pursued by constables, such as phone calls, computer checks, etc. This issue was addressed in response to question 16, wherein it was concluded that, pursuant to A.C.A. §14-14-1203 (1987), any compensation allowed for expenses must come through a specific appropriation by the county quorum court.
Your twenty-fifth question is whether the office of constable is still considered to be an extension of the county, even though it is a township elected position. The general nature of this question precludes a conclusive response. As a general matter, however, A.C.A. § 14-14-401 (1987) provides that each county of the state shall divide its land area into convenient county quorum court districts, and that the political townships of the respective counties which were in effect at the time of adoption of Amendment 55 to the Arkansas Constitution shall continue.See also A.C.A. § 14-14-1205 (Cum. Supp. 1991), which discusses compensation of township officers, including constables, by the county quorum courts.
Your twenty-sixth question is: If the office of constable is an "extension of the county," what rights and/or privileges would a constable be entitled to, "equal to others in the county?" I am unable to respond to this general question in the absence of a reference to the specific rights and/or privileges involved.
Your twenty-seventh question inquires as to the "constables' fund." You have asked what it is, what its functions are, what it provides for constables, and how it is supported. My research has not disclosed the existence of such a fund.[4]
Your twenty-eighth question is whether there is a certain amount of fine money which is set aside for the usage of the active constables in this state, and what is needed to properly access the fund. As set out in the preceding paragraph, I am unaware of such a fund. It should perhaps be noted in this regard that A.C.A. § 16-17-114 (1987) specifically prohibits constables and deputy constables from receiving any fees, costs, penalties, payments or compensation of any kind or nature in any criminal suit, prosecution, or arrest, or in any criminal proceeding whatsoever. And while A.C.A. § 21-6-308(c) provides that certain monies may be collected by constables, subsection (b) of §21-6-308 states that they must be turned over to the county treasurer. See also Op. Att'y. Gen. 91-039 (copy enclosed).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
SD/WB:cyh
Enclosures
[1] While we cannot, within the context of this opinion, outline a treatise on each of these other statutory duties, for examples of some of these duties, reference should be made to A.C.A. §§ 2-34-304; 5-66-102, 108, 116; 5-72-110; 11-4-305;12-11-103; 12-42-106; 15-41-204; 15-43-324; 16-17-224; 16-19-103, 403, 405, 503, 504, 506, 1001, 1003, 1005, 1008, 1009, 1010;16-55-114, 117; 16-58-107, 109, 112, 113, 117; 16-80-103;16-81-104; 16-82-202; 16-83-103, 106; 16-84-102 (Cum. Supp. 1991); 16-85-603, 605; 16-93-706; 16-109-111; 16-110-304, 408;16-112-123; 17-43-105; 18-43-109, 112; 18-48-102, 303; 20-47-102;21-6-505; 23-12-608, 708; 26-39-503; 26-76-106, 204; 27-50-609; and 27-102-110.
[2] Other statutory provisions pertaining to the authority of constables to arrest include A.C.A. §§ 15-41-204; 16-17-224;16-81-104; 16-83-106; 16-85-603; 16-112-123; and 17-43-105.
[3] A.C.A. §§ 16-19-403 and -405 authorize constables to serve summons and other process in the several townships where multiple defendants may reside if the defendants are jointly liable to a suit; A.C.A. § 16-83-106 authorizes constables to arrest individuals who are accused in a coroner's inquisition of having caused the death of the deceased who is the subject of the inquisition.
[4] Proposed House Bill 1016 of 1991 would have allowed quorum courts to levy a $3 court cost for a county constable fund. The proposal passed the House and Senate, but was vetoed by the Governor on April 10, 1991.